IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BENARD MCKINLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 13-cv-0937-MJR-SCW |
| AIMEE LANG, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff brought this action alleging deliberate indifference to his asthma condition pursuant to 42 U.S.C. § 1983. (Doc. 1). The relevant events occurred at Menard Correctional Center. (Doc. 1). Specifically, the threshold order found that Plaintiff had stated a claim for deliberate indifference against Lang when she allegedly took no steps to secure an inhaler refill or have Plaintiff's asthma treated. (Doc. 7).

There are currently two motions for summary judgment pending. Plaintiff filed his motion on July 15, 2015. (Doc. 63). Defendant filed a response on August 14, 2015. (Doc. 64). Defendant then filed her Motion for Summary Judgment on October 2, 2015. (Doc. 68). Plaintiff filed a Response on October 21, 2015. (Doc. 71). No side ever filed a Reply to either Motion, making these motions ripe for disposition.

### FACTUAL BACKGROUND

Lang has been employed as a Correctional Medical Technician at Menard since 2006. (Doc. 63-2, p. 11). During the relevant time period, she held that position and was responsible for TB skin testing, checking patient vital signs, nurse sick call, providing

1

assistance to the doctor, insulin and medicine administration, emergency call response, preparing and charting notes and records, and segregation rounds. (Doc. 63-2, p. 11-12). Lang has also been a Licensed Practical Nurse since December 30, 2004. (Doc. 64-1, p. 1). In December 2012, Lang worked under Registered Professional Nurse Gail Walls. (Doc. 64-1, p. 1). Lang's duties included assessing inmates to determine whether immediate medical attention was necessary. (Doc. 64-1, p. 1). Lang asserts that she was not required to report to a doctor or a nurse practitioner if an inmate requested a refill of a discontinued medication. (Doc. 64-1, p. 2).

Plaintiff has attended Menard's Respiratory/Asthma Chronic Clinic since 2004. (Doc. 62, p. 3). Plaintiff attended a quarterly asthma clinic on October 24, 2012. (Doc. 64-2, p. 4). Although the worksheet specifically lists under "Plan" "short acting beta agonist for all inmates that have asthma symptoms," the chart contains a note that Plaintiff self-reported that he does not need "it." (Doc. 64-2, p. 4). Plaintiff disputes that he said this. (Doc. 64-3, p. 29). There is a "D/C" mark next to Xopenex, a beta inhaler. (Doc. 64-2, p. 4). Plaintiff was not told that his inhaler would be discontinued. (Doc. 64-3, p. 29). Plaintiff also denied daytime or nighttime symptoms at that time. (Doc. 64-2, p. 4). The worksheet also notes that "inmates who are asymptomatic and off medication for a year may be discharged from the asthma clinic. They must be reenrolled for any episode of asthma symptoms." (Doc. 64-2, p. 4).

Plaintiff was transferred to administrative detention at Menard on October 25, 2012, which is akin to segregation. (Doc. 63-2, p. 1). On December 14, 2012, he suffered an asthma attack, and used his asthma rescue inhaler to address his symptoms. (Doc.

2

63-2, p. 1). Health care staff on rounds pulled Plaintiff out of his cell, but determined that he was okay. (Doc. 63-4, p. 27, 33). No medical record of the attack exists.

On December 19, 2012, Plaintiff saw Lang and told her that he had been having difficulties breathing and that he needed a refill for his inhaler because he was below the recommended number of pumps for requesting a refill. (Doc. 63-2, p. 1). Plaintiff gave Lang his refill tab on a sick call slip. (Doc. 63-2, p. 1; Doc. 64-3, p. 16). Plaintiff understood that submitting a refill tab on a sick call slip was the proper method of requesting a refill. (Doc. 64-3, p. 17). Inmate Fernandez submitted an affidavit corroborating these events. (Doc. 63-2, p. 9). Plaintiff had ten pumps left on his inhaler at this time. (Doc. 63-2, p. 1). He also reported that his asthma had worsened lately, which he attributed to the poor conditions in his cell. (Doc. 63-2, p. 1). Plaintiff's asthma is triggered by dust, poor ventilation, and humidity. (Doc. 64-3, p. 24). The December 19, 2012 conversation is not memorialized in the medical records. Lang's responses to Plaintiff's sixth set of interrogatories states that she did not refer Plaintiff to first aid because she did not observe him experiencing breathing difficulties that required immediate medical attention. (Doc. 63-2, p. 15).

On December 21, 2012 Lang told Plaintiff that his prescription had been discontinued on October 24, 2012. (Doc. 63-2, p. 1; Doc. 62, p. 2). Plaintiff told her that his asthma had been bothering him and that as a consequence, he was now down to one pump in his inhaler. (Doc. 63-2, p. 1). Lang told Plaintiff that he was on a one-year asthma medical close watch. (Doc. 63-2, p. 1). Plaintiff requested that Lang schedule him for an immediate doctor's appointment so that he could get a refill of his inhaler.

(Doc. 63-2, p. 1). Lang told him he had an appointment scheduled for a date in February and that she would not schedule him for an appointment any sooner. (Doc. 63-2, p. 1). Plaintiff ultimately saw the doctor on March 5, 2013. (Doc. 63-2, p. 1). Plaintiff persisted in his request for a more timely appointment. (Doc. 63-2, p. 2). Lang told him to stop bugging her and that he would see the doctor according to the prescheduled appointment. (Doc. 63-2, p. 2). She further told him to stop asking her for another appointment because she would not make one sooner. (Doc. 63-2, p. 2). Plaintiff submitted affidavits from Joseph Tillman and Rogelio Fernandez which corroborate Plaintiff's version of events. (Doc. 63-2, p. 7-8-9). The December 21, 2012 conversation is not memorized in the medical records.

Plaintiff experienced tightness in his chest and difficulty catching his breath on December 23, 2012. (Doc. 63-2, p. 2). On December 24, 2012, Plaintiff awoke in the middle of the night with breathing difficulties. (Doc. 63-2, p. 2). He attributed both of these incidents to being without his inhaler.

Lang completely ignored Plaintiff on her daily check-up rounds on December 26, 2012. (Doc. 63-2, p. 2). Plaintiff alleges that he wished to give her another sick call slip on that date. (Doc. 71, p. 9).

In response to Plaintiff's requests to admit, Lang admitted that it is possible that Plaintiff complained to her regarding refills of his inhaler, but that she does not specifically recall any conversations between her and Plaintiff. (Doc. 62, p. 1). She recalls calling the pharmacy at some point to check Plaintiff's prescription. (Doc. 62, p. 1). Lang further admits that she relied on her nursing skills to determine whether

4

Plaintiff needed immediate attention, including whether he required first aid in December 2012. (Doc. 62, p. 2). Lang's nursing skills do not allow her to recognize every symptom and condition a patient may have. (Doc. 62, p. 2). Lang admits that she did not conduct an ENT exam, peak expiratory flow rate (PEFR), lung examination, or take Plaintiff's vital signs on December 19 or December 21, 2012. (Doc. 62, p. 6).

Plaintiff alleges that he experienced breathing difficulties on December 30, 2012, January 2, 2013, January 8, 2013, January 11, 2013, January 14, 2013, January 17, 2013, January 20, 2013, January 28, 2013, February 1, 2013, February 7, 2013, February 13, 2013, February 18, 2013, February 24, 2013, February 27, 2013, and March 4, 2013. (Doc. 63-2, p. 2-3). He wrote to the medical director complaining of these incidents on February 19, 2013. (Doc. 63-2, p. 3). Plaintiff put in a sick call request slip on February 28, 2013. (Doc. 63-2, p. 3). Lang admits that she did not schedule Plaintiff for an appointment during this time. (Doc. 62, p. 3).

As a result of these incidents, Plaintiff had difficulty catching his breath. (Doc. 64-3, p. 14). He had a hard time exercising. (Doc. 64-3, p. 14). He experienced chest pains, headaches, and dizziness. (Doc. 64-3, p. 14). Plaintiff also had difficulty reading, writing, and washing his clothes. (Doc. 64-3, p. 14).

Plaintiff saw the asthma clinic nurse practitioner, Rasheda Pollion, on March 5, 2013. (Doc. 63-2, p. 3) (Doc. 64-2, p. 6). He complained about his recent breathing issues. (Doc. 63-2, p. 3). He also reported an asthma attack in December 2012. (Doc. 64-2, p. 6). In response, Pollion told Plaintiff that she would have scheduled him for an appointment sooner had she been aware of the situation. (Doc. 63-2, p. 3). Pollion

further stated that Lang had not brought the situation to her attention.  (Doc. 63-2, p. 3). Pollion told Plaintiff she would refill his prescription.  (Doc. 63-2, p. 3).  Lang admits Plaintiff's prescription was refilled on March 5, 2013.  (Doc. 62, p. 2; Doc. 64-2, p. 6). Shearing responded to Plaintiff's letter on March 13, 2013, referring to his March 5th appointment and indicating that the situation appeared to be resolved.  (Doc. 63-2, p. 4).

## LEGAL STANDARDS

1. **Summary Judgment Standard**

Summary judgment is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  *Dynegy Mktg. & Trade v. Multiut Corp.*, **648 F.3d 506, 517 (7th Cir. 2011) (***citing* **FED. R. CIV. P. 56(a)).**  The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits and information obtained via discovery—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986).**  In determining whether a genuine issue of material fact exists, the Court must view the record in a light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 255 (1986).**

At summary judgment, the Court's role is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter, but rather to determine whether a genuine issue of triable fact exists.  *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, **528 F.3d 508, 512 (7th Cir. 2008)**.

When the party moving for summary judgment will also bear the burden of proof at trial, he must show that the record contains proof essential to establishing all of

6

the elements of his claim—in legal parlance, he must establish a prima facie case. *See Celotex*, **477 U.S. at 331 ("If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial");** *see also MMG Fin. Corp. v. Midwest Amusements Park, LLC*, **630 F.3d 651, 656 (7th Cir. 2011);** *Montgomery v. Am. Airlines, Inc.*, **626 F.3d 382, 389 (7th Cir. 2010).** Since the burden of proof at trial belongs to Plaintiff and he is moving for summary judgment, he must be able to establish each of the essential elements of his claim for the Court to grant summary judgment in his favor. *Celotex*, **477 U.S. at 322-23;** *Montgomery*, **626 F.3d at 389.** This is not the same as a motion for summary judgment made by a defendant: when the movant does not bear the burden at trial, he can prevail if he can show there is an absence of evidence for the nonmovant's claims. *Modrowski v. Pigatto*, **712 F.3d 1166, 1169 (7th Cir. 2013).**

2. **Eighth Amendment Deliberate Indifference**

Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishment" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, **414 F.3d 645, 652–53 (7th Cir. 2005)**. A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm, but is not entitled to demand specific care. *Forbes v. Edgar*, **112 F.3d 262, 267 (7th Cir. 1997).**

To prevail, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, **658 F.3d 742, 750 (7th Cir. 2011).** The first prong that must be satisfied is whether the prisoner has shown he has an objectively serious medical need. *Id.* A medical

condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary infliction of pain if not treated. *Gayton v. McCoy*, **593 F.3d 610, 620 (7th Cir. 2010).** Only if the objective prong is satisfied is it necessary to analyze the second prong, which focuses on whether a defendant's state of mind was sufficiently culpable. *Greeno*, **414 F.3d at 652–53.**

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Id.* The plaintiff need not show the physician literally ignored his complaint, just that the physician was aware of the serious medical condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, **546 F.3d 516, 524 (7th Cir. 2008).**

## ANALYSIS

**Serious Medical Need**

A medical need is "serious" if it has been treated by a physician or is so obvious that a layperson would recognize the condition as requiring treatment. *Thomas v. Walton*, **461 F.Supp.2d 786, 793 (S.D. Ill. 2006)**. Whether asthma is a serious need is a fact-specific inquiry that depends on the severity of the attacks. *Board v. Farnham*, **394 F.3d 469, 484 (7th Cir. 2005);** *Lee v. Young*, **533 F.3d 505, 510 (7th Cir. 2008)**.

Here, Plaintiff has submitted evidence that he was diagnosed with asthma as a child and has been receiving medical care in prison related to his asthma since 2004. Plaintiff has also submitted evidence showing that, without a rescue inhaler, he suffers from breathing difficulties at least once a week. Plaintiff has further submitted evidence that these difficulties interfere with his daily activities and cause him physical pain.

Although it may be a close call, at this point the Court cannot say that Plaintiff's asthma is not a serious medical condition. Plaintiff has submitted sufficient evidence to survive summary judgment on the question of whether his asthma constitutes a serious need.

Furthermore, Lang's argument that Plaintiff was not suffering from a serious medical need on the days she spoke to him is patently frivolous. There is no support in the case law for Lang's position that asthma is only a serious medical condition when a prisoner is in the middle of a full blown asthma attack. Lang's contention also ignores the nature of asthma as a disease. Plaintiff's own testimony establishes that sometimes his asthma is better controlled than other times due to environmental factors. The proper inquiry under the case law is to assess the severity of the attacks.

Lang also argues that Plaintiff's attacks cannot be serious because the December 14th attack was easily controlled without the intervention of the medical staff. This argument overlooks the fact that the attack was controlled with the very medication that Plaintiff says that Lang refused to take steps to refill.

**Subjective Component**

Lang makes several arguments that she is entitled to summary judgment because she did not have the requisite mental state. First, Lang argues that she was entitled to rely on Pollion's assessment as a medical professional that Plaintiff did not need an inhaler during the relevant time period. As Plaintiff states that he never told Pollion that he did not need an asthma inhaler, a reasonable inference is that Pollion concluded that Plaintiff was asymptomatic after Plaintiff told her he was not experiencing daytime or nighttime symptoms. However, Plaintiff was transferred to the segregation unit the

Case 3:13-cv-00937-SCW   Document 78   Filed 03/11/16   Page 10 of 12   Page ID #474

very next day after Pollion made the October 2012 assessment—an area that Plaintiff alleges was environmentally worse for his asthma condition.  The asthma clinic worksheet notes that it is important to immediately notify health care staff if an inmate who has been deemed asymptomatic starts showing symptoms again.

Therefore, the fact that Plaintiff told Lang that he was experiencing symptoms was highly relevant to his continuing medical care.  It is not a circumstance that Lang should have felt free to ignore due to a prior medical judgment.  It is clear from the documentation that the prior medical judgment that Plaintiff did not need an inhaler was contingent on him being asymptomatic.  Plaintiff told Lang he had been experiencing symptoms and addressing them with medication for which he no longer had a prescription.  The Court is very disturbed that Plaintiff has testified that unnamed health care staff monitored him after his December 14, 2012 asthma attack yet failed to create a medical record.  This would have been a highly relevant symptom for a doctor to consider.  And Plaintiff testified that he told Lang about the attack and the further symptoms he experienced, and in response she did not help him.  She did not document his symptoms.  She did not turn in his call slip asking for a refill to appropriate staff. She did not arrange for him to see a doctor or nurse practitioner.  She did nothing.

Lang also claims to both not remember any interactions with Plaintiff in December 2012 and that she examined him through the window of his cell and determined that he did not need first aid.  Inconsistencies aside, Plaintiff has never alleged that he suffered an actual attack and required first aid while Lang was present. He has alleged that he asked her to take steps to refill his medication because he began

experiencing increased asthma symptoms. He has also alleged that he gave her a sick call slip and attempted to give her a sick call slip while she was on rounds. Although Lang has also argued that she was not required to tell a doctor that Plaintiff wanted a refill, she has not submitted any evidence that it was somehow beyond her power to put in Plaintiff's sick call slip or arrange for Plaintiff to be placed on nurse sick call on her own authority. Lang may not have been deliberately indifferent to an emergency, but that is not the charge here. On these facts, if a jury determines that Plaintiff suffered from a serious medical need, they could reasonably conclude that Lang was deliberately indifferent. As such, Lang's motion for summary judgment must be denied.

Plaintiff argues that he is entitled to summary judgment against Lang on these facts. As discussed above, the severity of Plaintiff's asthma is a factual question that determines whether he has a sufficiently serious medical need. It is also possible that a jury could conclude that Lang was merely negligent, not deliberately indifferent. Both prongs of the analysis here are questions of fact that a jury could resolve in favor of either party, so the Court must deny Plaintiff's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (Doc. 63) is **DENIED**. Lang's motion for summary judgment (Doc. 68) is likewise **DENIED**. This case will proceed to trial on Plaintiff's claims.

IT IS SO ORDERED.

DATED:  March 11, 2016

                                              /s/ **Michael J. Reagan**
                                              **Chief Judge Michael J. Reagan**
                                              **United States District Court**